UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LEDRA A. CRAIG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:25-cv-01530-HEA |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES OF AMERICA'S RESPONSE TO PETITIONER'S
MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

The United States of America, through United States Attorney Thomas C. Albus and Assistant United States Attorney Derek J. Wiseman and Special Assistant United States Attorney Samantha J. Reitz, files this Response in Opposition to the Motion to Vacate, Set Aside, or Correct Sentence ("Section 2255 Motion") filed by Petitioner Ledra A. Craig ("Craig") pursuant to Title 28, United States Code, Section 2255. *Ledra A. Craig v. United States*, No. 4:25-cv-01530-HEA ("Civil Case"), Doc. #1. As explained more fully below, Craig's claims fail because they are conclusory and belied by the record. Accordingly, the United States respectfully requests this Court deny Craig's Section 2255 Motion without a hearing.

**I.     Offense Conduct**

In the early morning of August 2, 2020, Craig approached victims R.P. and N.B. at the Ameristar Casino in St. Charles, Missouri, and offered to sell R.P. cocaine. *United States v. Ledra A. Craig*, No. 4:20-cr-00403-HEA ("Criminal Case"), Trial Transcript (hereinafter "TR.") TR., Vol. 3, p. 28–30, 137–38; *see also* Government Exh. 60, 0:01–1:06. Before completing this transaction, Craig encountered and went into a casino bathroom with a third victim, L.T. TR., Vol. 2, p. 57; TR., Vol. 3, p. 134; Government Exh. 19, 1:14–2:28. Craig and L.T. stayed in the

1

bathroom for approximately five minutes, before exiting together and meeting back up with R.P. at the gaming floor exit. TR., Vol. 2, p. 57–58; TR., Vol. 3, p. 134; Government Exh. 19, 2:29–3:58.

Craig, R.P., and L.T. then walked together to the elevators that led to the casino parking garage. *See* TR., Vol. 2, p. 59–60; TR., Vol. 3, p. 135; *see also* Government Exh. 19, 4:02–5:28. Craig and R.P. got into an elevator together, and L.T. walked back towards the casino lobby. TR., Vol. 2, p. 60–61, 68–69; TR., Vol. 3, p. 135; Government Exh. 19, 5:29–5:55; Government Exh. 22, 0:01–1:02.

Shortly thereafter, L.T. collapsed in the casino lobby. TR., Vol. 2, p. 69–71; TR., Vol. 3, p. 135–36; Government Exh. 22, 4:00–4:13, 5:16–6:15; Government Exh. 23. Paramedics were called to the scene and administered two doses of Narcan to L.T., who was breathing only about four to six times per minute. TR., Vol. 2, p. 179–81. The paramedics then transported L.T. to a hospital for further treatment. *Id.* at 182. Urinalysis indicated the presence of fentanyl and no other narcotic in L.T.'s system. *Id.* at 200; Government Exh. 41.

Meanwhile, Craig and R.P. rode the elevator to the casino parking garage, where Craig entered a vehicle driven by a man named Brian Walker. TR., Vol. 2, p. 61; TR., Vol. 3, p. 136–37; Government Exh. 19, 5:50–7:09. From the front passenger seat of the vehicle, Craig sold R.P. a substance that R.P. believed was cocaine but that Craig knew to be fentanyl. *See* TR., Vol. 2, p. 61–63; TR., Vol. 3, p. 31–33, 136–38; Government Exh. 20, 0:07–4:54. R.P. stood outside the vehicle, next to Craig, for most of the transaction. *See* Government Exh. 20, 0:07–4:54. N.B. approached the vehicle during the transaction and spoke briefly to R.P. and Craig, but he walked away when casino security guards approached.[1] *Id.* at 3:17–4:02; *see also* TR., Vol. 3, p.

---

[1] N.B. had hit the parking garage gate with his vehicle when he and R.P. arrived at the casino early

32. R.P. initially attempted to duck into the back seat of the vehicle when the security guards approached but then got out to speak with them. *See* Government Ex. 20, 4:02–5:06. While R.P. spoke with the security guards, Craig and Walker departed the parking garage in Walker's vehicle. *Id.* at 4:55–5:06. After Walker's vehicle departed, N.B. rejoined R.P. to speak with the security guards. Government Ex. 21. N.B. and R.P. then made their way back to N.B.'s vehicle, on a different floor of the parking garage, and departed. *Id.* As N.B. and R.P. were exiting the casino property, an ambulance was already arriving to treat L.T. *See* TR., Vol. 3, p. 138; *see also* Government Exh. 21.

Just a few hours later, N.B. and R.P. were found suffering from fentanyl overdoses inside N.B.'s vehicle, which was still running and had rolled into the front lawn of a house in a residential neighborhood. *See* TR., Vol. 1, p. 173, 177–80, 187–88. N.B., who had been driving, was unresponsive, turning blue, and breathing shallowly. TR., Vol. 1, p. 196; Government Exh. 4, 0:36–1:28. N.B. was administered Narcan and transported to the hospital for treatment. TR., Vol. 1, p. 197, 202; TR., Vol. 2, p. 202–03; Government Exh. 4, 1:29–6:33. A toxicology report confirmed the presence of fentanyl in his system. TR., Vol. 2, p. 208; Government Exh. 44, p. 3.

R.P., who was in the passenger seat, was blue and unresponsive, and officers were unable to locate a pulse. TR., Vol. 1, p. 199; Government Exh. 4; Government Exh. 5. There was fentanyl powder on R.P.'s seat. TR., Vol. 1, p. 203, 221; Government Exh. 15. Officers administered Narcan to R.P. and performed chest compressions, but neither they nor the paramedics who soon arrived were able to revive him. TR., Vol. 1, p. 211–12; Government Exh. 4; Government Exh. 5. R.P. was pronounced dead at the scene. *Id.*; *see also* TR., Vol. 2, p. 190. The forensic toxicology report for R.P. showed a lethal amount of fentanyl in his blood. *See* TR., Vol. 2, p. 238; *see also*

---

that morning. *See* TR., Vol. 2, p. 13, 23, 97; TR., Vol. 3, p. 38.

Government Exh. 46. The forensic pathologist who performed the post-mortem examination of R.P. determined that R.P. died from a fentanyl overdose. *See* TR., Vol. 2, p. 148; *see also* Government Exh. 48, p. 6.[2]

Later, on the same day as the overdoses, investigators located Walker, who contacted Craig to arrange a controlled purchase of fentanyl. TR., Vol. 2, p. 72; TR., Vol. 3, p. 143–44. Craig sold fentanyl to an undercover officer that evening and was arrested. *See* TR., Vol. 2, p. 73; TR., Vol. 3, p. 73–74, 151–53; *see also* Government Exh. 52.

Investigators conveyed Craig to the police station, where, in an interview, Drug Enforcement Administration ("DEA") Task Force Officer ("TFO") Daniel Plumb and St. Peters Police Department Detective John Briggs advised Craig of his *Miranda* rights. *See* TR., Vol. 2, p. 75–77; TR., Vol. 3, p. 153–54; *see also* Government Exh. 58. Craig signed a form stating that he was willing to waive those rights and speak with the investigators. *Id.*

After answering some questions, Craig also executed a written consent to the search of his residence. *See* TR., Vol. 2, p. 77–80; TR., Vol. 3, p. 154; *see also* Government Exh. 29. Craig then accompanied investigators to the house, where investigators located fentanyl capsules and residue, Dormin, the shirt that Craig was wearing at the casino, and R.P.'s cellphone.[3] *See* TR., Vol. 2, p. 80–93; TR., Vol. 3, p. 155.

After concluding the search, investigators conveyed Craig back to the police station, where he was interviewed again by TFO Plumb and Detective Briggs. TR., Vol. 2, p. 93; TR., Vol. 3, p. 156. During the interview, Craig admitted to selling a substance to R.P. that R.P. believed to be

---

[2] The forensic pathologist who examined R.P. also rejected the analysis adopted by an expert witness put on by the defense that R.P.'s cause of death was an enlarged heart. TR., Vol. 2, p. 133.
[3] R.P.'s girlfriend testified that, not long after learning of R.P.'s passing, she received a call from a blocked number, in which the caller claimed to have R.P.'s cellphone. TR. Vol. 3, p. 13. She also shared location information from R.P.'s cellphone with investigators. TR., Vol. 2, p. 44–45.

cocaine but that Craig knew was fentanyl. *See* TR., Vol. 3, p. 138; *see also* Government Exh. 60, 0:01–1:06, 9:44–11:17. Craig also stated that L.T. had been "begging." Government Exh. 60, 1:44–1:54. Craig told investigators that he had obtained the fentanyl from a source of supply known as "Glenn." *See* TR., Vol. 3, p. 160–61; *see also* Government Exh. 60, 1:07–1:20, 9:45– 10:36. Craig also admitted that he had "middled a deal" for "Glenn" about three or four times over the past month. *See* Government Exh. 60, 11:48–12:40.

## II.    Procedural History

### A.    Pretrial Proceedings

On August 3, 2020, the day after Craig's arrest, the Criminal Case was initiated by a Complaint. Criminal Case, Doc. #1.

On August 5, 2020, pursuant to the provisions of the Criminal Justice Act ("CJA"), the Office of the Federal Public Defender was appointed as defense counsel. Criminal Case, Doc. #8.

On August 20, 2020, the original Indictment in the Criminal Case was returned. Criminal Case, Doc. #17.

On September 2, 2020, Craig was arraigned. Criminal Case, Doc. #20. At this arraignment, defense counsel from the Office of the Federal Public Defender, Nanci McCarthy, made an oral motion for extension of time to file pretrial motions. Criminal Case, Doc #21. United States Magistrate Judge Patricia L. Cohen issued an Order Concerning Pretrial Motions that same day, granting the oral motion and setting an original deadline for Craig to file or waive pretrial motions of October 16, 2020. Criminal Case, Doc. #22. That Order clearly provided that "[f]ailure to timely file motions or requests, or to request an extension of time to do so, may be considered a waiver of the right of a party to make such motions or requests, as set out in Fed. R. Crim. P. 12(c)(3)."

*Id.* at 4. On September 10, 2020, the First Superseding Indictment was returned. Criminal Case, Doc. #25.

On September 22, 2020, defense counsel Ms. McCarthy moved to withdraw. Criminal Case, Doc. #30. Her motion was granted, and new CJA counsel John Stobbs was appointed that same day. Criminal Case, Doc. #31 and 32.

On October 22, 2020, defense counsel Mr. Stobbs filed a Motion for Extension of Time to File Pre-Trial Motions, followed the next day by a Motion to Continue Trial Date Beyond Limits Set by the Speedy Trial Act and for Complex Case Finding. Criminal Case, Doc #38 and 40. The latter motion stated, among other reasons, that "the complexity of the factual issues and the nature of the prosecution make it unreasonable to expect adequate preparation for pretrial proceedings and for the trial itself within the time limits established by Section 3161." Criminal Case, Doc # 40 at 1. United States Magistrate Judge Patricia L. Cohen granted both motions.  Criminal Case, Doc. #41 and 43.

On November 18, 2020, the Second Superseding Indictment was returned. Criminal Case, Doc. #48. It charged Craig with five counts: (1) conspiracy to distribute and possess with intent to distribute fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 846, (2) distribution of fentanyl to L.T., resulting in serious bodily injury to L.T., in violation of 21 U.S.C. § 841(a)(1), (3) distribution of fentanyl to R.P., resulting in serious bodily injury to N.B., in violation of 21 U.S.C. § 841(a)(1), (4) distribution of fentanyl to the undercover officer, in violation of 21 U.S.C. § 841(a)(1), and (5) distribution of fentanyl to R.P., resulting in the death of R.P., in violation of 21 U.S.C. § 841(a)(1). *Id.*

On November 24, 2020, Craig was arraigned on the Second Superseding Indictment. Criminal Case, Doc. #51. At this arraignment, defense counsel Mr. Stobbs made an oral motion

6

for extension of time to file pretrial motions. Criminal Case, Doc. #52. United States Magistrate Judge Patricia L. Cohen issued an Order Concerning Pretrial Motions that same day, granting the oral motion and setting a new pretrial motions deadline of January 8, 2021 (Doc. #53). That Order also included the same provision as the September 2, 2020 order regarding the potential waiver of motions not filed. *Id.* at 4.

Defense counsel Mr. Stobbs filed three motions for extension of time to file pretrial motions between January and April of 2021, (Criminal Case, Doc. #55, 61, and 65), all of which were granted (Criminal Case, Doc. #57, 62, and 66).

On May 21, 2021, defense counsel Mr. Stobbs filed a Motion to Suppress Evidence on behalf of Craig. Criminal Case, Doc. #71.[4]

On June 2, 2021, in response to filings by Craig and Mr. Stobbs, United States Magistrate Judge Patricia L. Cohen held a status conference where she granted Mr. Stobb's motion to withdraw. Criminal Case, Doc. #77.

On June 3, 2021, Robert S. Adler was appointed as Craig's new CJA defense counsel. Criminal Case, Doc. #79. On December 8, 2021, Tory D. Bernsen entered her appearance as pro bono co-counsel with Mr. Adler. Doc. 110.

On September 29, 2021, Craig filed a motion to suppress his post-arrest statements, the items seized at his residence, and the information seized from his cellphone. Criminal Case, Doc. #96, at 8–9. Craig's Motion to Suppress was based on the following allegations: (1) that law enforcement officers had forged Craig's signature on his *Miranda* waiver and the consent-to-search forms, or (2) if the signatures were in fact Craig's, that he did not understand what he was

---

[4] This Motion to Suppress raised the same issues as the one that was later filed in Criminal Case, Doc. #96.

signing and that promises were made to obtain his signature. *Id.* at 6–8. To support this position, Craig's Motion to Suppress argued that it "stretche[d] creduility" that the law enforcement officers who interviewed Craig recorded only the portion of the interview in which Craig made admissions after the search of his residence, not the portions in which the *Miranda* waiver and consent forms were executed. *Id.* at 11. Craig's Motion to Suppress also stated that TFO Plumb had ordered that Craig not be permitted to call anyone, including a lawyer. *Id.* at 6.

On October 5, 2021, the Government filed an Unopposed Motion to Continue the Motion to Suppress Response Deadline (Criminal Case, Doc. #99), which was granted (Criminal Case, Doc. #100). The Government filed its response on October 28, 2021. Criminal Case, Doc. #103.

On December 8, 2021, United States Magistrate Judge Patricia L. Cohen held an evidentiary hearing, at which the Government elicited testimony from TFO Plumb and Detective Briggs. Criminal Case, Doc. #111. Following the hearing, Craig was granted 30 days after receipt of the transcript to file a post-hearing memorandum. *Id.*

Between February and March of 2022, defense counsel Mr. Adler filed three motions for extension of time to file a post-hearing brief (Criminal Case, Doc. #116, 118, and 120) and one motion for leave to file the post-hearing brief out of time (Criminal Case, Doc. #124), all of which were granted (Criminal Case, Doc. #117, 119, 121, and 126).

On March 2, 2022, defense counsel Mr. Adler filed Craig's Post-Hearing Brief. Criminal Case, Doc. #123. The Government responded on March 7, 2022. Criminal Case, Doc. #127.

On April 8, 2022, the Magistrate Judge issued a Report & Recommendation ("R&R") concluding that Craig's Motion to Suppress be denied. Criminal Case, Doc. #128. The R&R found that Craig had voluntarily executed his *Miranda* waiver and written consents and that there was "absolutely no support" for his contention that he had been "promised 'leniency' in exchange."

Criminal Case, Doc. #128, at 10–11. In addition, Judge Cohen also expressly found that "TFO Plumb's testimony was credible, undisputed, and well-supported by other record evidence, including the videorecorded second interview as well as Detective Briggs' hearing testimony." *Id.* at n.3.

On April 12, 2022, this Court issued an Order Setting Forth Trial Procedures in Criminal Cases, which set the case for trial on May 31, 2022. Criminal Case, Doc. #129. Defense counsel Mr. Adler filed two motions to continue the trial date between May and July of 2022 (Criminal Case, Doc. #134 and 137), both of which were granted by the Court (Criminal Case, Doc. #135, 138, and 141). The trial date was set for September 26, 2022. Criminal Case, Doc. #141.

On August 16, 2022, in response to a filing by Mr. Adler, this Court held a status conference and granted Craig's request for new counsel. Criminal Case, Doc. #143. The following day, Susan McGraugh was appointed as Craig's new CJA defense counsel. Criminal Case, Doc. #144.

On September 13, 2022, new defense counsel Ms. McGraugh filed a Motion for Continuance of Trial Setting and Waiver of Speedy Trial. Criminal Case, Doc. #147. That motion stated, among other items, that counsel could not "sufficiently prepare for trial in five weeks," and that counsel had discussed Craig's "right to a speedy trial with him" and Craig "affirms that he knowingly and voluntarily chooses to waive his right to speedy trial." *Id.* The Court granted this motion on September 19, 2022, and set a trial date of January 17, 2023. Criminal Case, Doc. #148 and 149.

On October 4, 2022, this Court adopted the R&R in full and denied Craig's Motion to Suppress. Criminal Case, Doc. #150.

On December 8, 2022, the Court received and docketed Craig's *Pro Se* Motion to Dismiss. Criminal Case, Doc. #161. That motion, which was handwritten and signed by Craig, argued that the Second Superseding Indictment should be dismissed for violations of the Speedy Trial Act and

Craig's Sixth Amendment right to a speedy trial. In support of his *pro se* motion, Craig claimed that (1) "the court issued orders including" language regarding exclusion of delay under the Speedy Trial Act in "some but not all of the continuances in this case," and (2) Magistrate Judge Cohen's Report and Recommendation on Craig's Motion to Suppress Evidence was not issued within 30 days of taking the motion under advisement at the conclusion of the December 8, 2021 evidentiary hearing. *Id.* at 3. Additionally, in a letter to the Court accompanying the motion, Craig asserted that he "never waived" his rights to a speedy trial, including in connection with the September 13, 2022, Motion for Continuance of Trial Setting and Waiver of Speedy Trial filed by defense counsel Ms. McGraugh. *Id.* at 1.

On December 14, 2022, the Government responded in opposition to Craig's *Pro Se* Motion to Dismiss. Criminal Case, Doc. # 162. On January 5, 2023, defense counsel Ms. McGraugh filed motions *in limine*, which included motions to restrict the admission of evidence regarding: (1) all of Craig's text messages – on relevance grounds, Criminal Case, Doc. #168, at 1, and (2) Craig's prior criminal convictions – as inadmissible under Federal Rule of Evidence 404(b), *id.* at 3.

On January 6, 2023, the Government filed its motions *in limine*, including three that are relevant here. Criminal Case, Doc. #171. First, the Government sought to admit (a) Craig's text messages with "Glenn," his source of supply, as non-hearsay coconspirator statements under Rule 801(d)(2)(E), *id.* at 8–9, and (b) additional text messages from Craig's cellphone as intrinsic evidence or, alternatively, under Rule 404(b), *id.* at 24–33. Additionally, the Government moved to admit Craig's prior drug conviction under Rule 404(b). *Id.* at 26–33. And finally, the Government requested the exclusion of unsupported allegations of law enforcement misconduct raised in Craig's Motion to Suppress. *Id.* at 23.

On January 9, 2023, the Court held a status conference and *Frye* hearing with Craig and his counsel, Ms. McGraugh. *See* Criminal Case, Doc. #181. At the status conference, after hearing further argument from Craig regarding alleged violations of the Speedy Trial Act, the Court denied Craig's *Pro Se* Motion to Dismiss. *Id.*; *see also* Status/*Frye* Hearing Transcript ("Status/*Frye* Tr.") at p. 19. During the status conference, Craig also confirmed to the Court that he was "perfectly satisfied" with having Ms. McGraugh represent him. *Id.* at p. 13; see also pp. 3–4. During the *Frye* hearing, the undersigned outlined the terms of the proposed plea agreement. *Id.* at pp. 19–20. Right after that, this Court asked the following questions:

> **THE COURT**: Is that your understanding, Ms. McGraugh?
>
> **MS. MCGRAUGH**: Yes, Your Honor, what he has said is my understanding.
>
> **THE COURT**: Is that also your understanding, Mr. Craig?
>
> **THE DEFENDANT**: Yes, sir.

*Id.* at p. 20. After making clear that Craig understood the terms of the plea offer from the United States, this Court asked him the following question:

> **THE COURT**: Do you have any questions for me in relation to anything that Mr. Wiseman said about the recommended plea agreement?
>
> **THE DEFENDANT**: I'm not going to plead guilty to something I didn't do.

*Id.* at p. 21.

On January 12, 2023, this Court ruled on the motions *in limine*. Criminal Case, Doc. #180. Regarding Craig's text messages, this Court (a) granted Craig's motion to exclude his text messages "as to non-relevant items" and overruled the motion "as to relevant items," Criminal Case, Doc. #180, at 1, and (b) granted the Government's motion to admit Craig's text messages with "Glenn" as non-hearsay coconspirator statements under Rule 801(d)(2)(E) "subject to proper

foundation," *id.* at 2. This Court's order did not directly address the motions with respect to the admission of Craig's prior drug conviction. *Id.* This Court granted the Government's motion to exclude previous allegations of law enforcement misconduct. *Id.* at 3.

**B.    Trial**

During the three-day trial—beginning on January 17, 2023—the United States presented the evidence of Craig's crimes outlined in the offense conduct section above. Also during the trial, Craig retained and called an expert witness to testify in his defense. Craig's expert witness testified that R.P.'s cause of death was an enlarged heart. TR., Vol. 2, p. 133. After deliberation, the jury found Craig guilty of all charges. TR., Vol. 4, p. 66–67.

**C.    Sentencing**

On May 1, 2023, before Craig's sentencing, defense counsel Ms. McGraugh filed a twelve-page sentencing memorandum, which detailed mitigation evidence for Craig and requested a below-Guidelines sentence. Criminal Case, Doc. #206.

On May 10, 2023, this Court sentenced Craig to an aggregate term of 420 months' imprisonment, consisting of 240 months on Counts 1 and 4 and 420 months on Counts 2, 3, and 5 (all to run concurrently). Criminal Case, Doc. #216.

**D.    Appeal**

On May 15, 2023, Craig filed a notice of appeal that he would be challenging both his criminal conviction and sentence to the Eighth Circuit Court of Appeals. Criminal Case, Doc. #218.

On August 16, 2023, Craig's defense counsel Ms. McGraugh filed the Appellant's Brief. *See United States v. Ledra A. Craig*, No. 23-2211 (Appeal), Appellant's Brief (Aug. 16, 2023). In this brief, Craig made the following arguments:

1.  The hearsay statements of "Glenn", a person not testifying at trial, were wrongfully admitted because there was insufficient proof of his involvement in the conspiracy with Appellant.

2.  Evidence of police officers' misconduct in obtaining defendant's statement was wrongfully excluded at trial because it denied the jury an opportunity to consider all the circumstances of the making of the statement.

3.  The admission of Appellant's unrelated prior conviction for distribution of drugs was wrongfully admitted because it was not relevant to any issue in the case and was offered only as propensity evidence.

*Id.* at p. 2.

On March 1, 2024, without oral argument, the Eighth Circuit rejected all of Craig's arguments and affirmed his conviction and sentence. *See* Appeal (Mar. 1, 2024).

On May 23, 2024, Craig filed a petition for writ of certiorari with the United States Supreme Court. Criminal Case, Doc. #242.

On October 7, 2024, the Office of the Clerk for the Supreme Court of the United States denied Craig's petition for writ of certiorari. Criminal Case, Doc. #243, p. 2.

**E.    Section 2255 Motion**

On October 14, 2025, more than a year after his petition for writ of certiorari was denied, Craig filed his Section 2255 Motion. *See* Criminal Case, Doc. #246, Civil Case, Doc. #1. In his Section 2255 Motion, Craig claimed that he mailed his Motion on October 6, 2025 (*i.e.*, one day before the deadline). *Id.* at p. 12. In his Section 2255 Motion, Craig also raises three grounds. *Id.* at pp. 4–7.

For "Ground One," Craig claimed "Ineffective Assistance of Pretrial Counsel," and—as the "specific facts that support [his] claim," Craig stated the following:

(1) Failing to adequately communicate with Craig and inform him of the relevant circumstances and likely consequences of entering a guilty plea as opposed to proceeding to trial;

13

(2) Failing to file any substantive pretrial motions and an adequate and independent
pretrial investigation; and
(3) Failing to make any meaningful effort to negotiate a favorable plea agreement
with the government.

*Id.* at p. 4.

For "Ground Two," Craig claimed "Ineffective Assistance of Trial Counsel," and—as the

only "specific facts that support [his] claim," Craig stated the following:

(1) Failing to advise Craig of the overall defense strategy, including any available
affirmative defenses and the theory of the defense; and
(2) Failing to subpoena and present defense witnesses whose testimony could have
supported Carig's innocence or bolstered his defense.

*Id.* at p. 5.

For "Ground Three," Craig claimed "Ineffective Assistance of Sentencing Counsel," and—

as the only "specific facts that support [his] claim," Craig stated the following:

(1) File substantive objections to the PSR deprived Craig of effective assistance of
sentencing counsel under the Sixth Amendment, a fair and just sentence; and
(2) Failure to argue for mitigation of punishment and object to his sentence being
substantively unreasonable.

*Id.* at pp. 6–7.

Following each of these three grounds, Craig's Section 2255 Motion did not include any

more specific contentions, but it did state that "A Memorandum of Law in Support will be

forthcoming." *Id.* at pp. 4–7.

As for "Ground Four," Craig wrote only "N/A," and as the "specific facts that support [his]

claim," Craig stated only "N/A." *Id.* at pp. 7–8.

On November 25, 2025, Craig filed a document that he purported to be a "Memorandum of

Law in Support of Motion Under 28 U.S.C. Section 2255." Doc. 9.[5] In that document, Craig

---

[5] Craig also filed a declaration in support of his out-of-time claims raised in his Memorandum of Law. *See* Doc. 5.
That declaration was filed well after the Section 2255 deadline, on November 3, 2025. *Id.*

reiterated his three conclusory grounds that he included in his Section 2255 motion. *Id.* at pp. 3–4. Also in his "Memorandum of Law," Craig raised an additional nine untimely grounds of purported ineffective assistance of counsel that are not properly before this Court. *Id.* at pp. 4–18. Included in Craig's untimely "Memorandum of Law," he raises the following ineffective assistance of counsel grounds that are not properly before this Court:

> GROUND FOUR - INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL (Failure to challenge Rule 33 denial and raise constitutional violations)
>
> GROUND FIVE - INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL (Failure to challenge unreliable medical cause of death evidence)
>
> GROUND SIX - INEFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSEL (Speedy Trial Act violations)
>
> GROUND SEVEN - INEFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSEL [sufficiency of the evidence regarding victim N.B.]
>
> GROUND EIGHT- INEFFECTIVE ASSISTANCE FOR FAILURE TO OBJECT TO RULE 404(b) (Failure to Investigate, Subpoena, Confront, and Challenge Causation and Insufficiency of the Evidence Related to Alleged Bodily Injury of [victim L.T.])
>
> GROUND NINE - INEFFECTIVE ASSISTANCE FOR FAILURE TO IMPEACH GOVERNMENT WITNESSES
>
> GROUND TEN - INEFFECTIVE ASSISTANCE REGARDING PROSECUTORIAL MISCONDUCT AND FALSE TESTIMONY [regarding Craig's post-arrest interview]
>
> GROUND ELEVEN - INEFFECTIVE ASSISTANCE REGARDING FOURTH AMENDMENT VIOLATIONS (Failure to challenge unlawful search, seizure, warrant defects, and chain of custody Ineffective Assistance of Trial Counsel for Failing to Challenge Biased Juror and For Allowing a Federal Probation Officer With Prior Professional Ties to the Prosecutor to Serve on the Jury)
>
> GROUND TWELVE - INEFFECTIVE ASSISTANCE FOR JURY-RELATED FAILURES (Ineffective Assistance of Trial Counsel for Preventing Defendant From Testifying and Failing to Prepare Defendant to Testify Regarding Police Misconduct and a Coerced Confession)

*Id.* None of the untimely claims raised by Craig in his Memorandum of Law arise out of the same set of facts as his original grounds raised in his timely Section 2255 Motion. *Id.*

## III.  Legal Standard

"Section 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (quotation omitted). And like habeas corpus, this statutory remedy "does not encompass all claimed errors in conviction and sentencing." *Id.* (quoting *United States v. Addonizio*, 442 U.S. 178, 185 (1979)). Under section 2255(a), a petitioner may file a motion for post-conviction review on four specified grounds: "(1) 'that the sentence was imposed in violation of the Constitution or laws of the United States,' (2) 'that the court was without jurisdiction to impose such sentence,' (3) 'that the sentence was in excess of the maximum authorized by law,' and (4) that the sentence 'is otherwise subject to collateral attack.'" *Martin v. United States*, 150 F. Supp. 3d 1047, 1049 (W.D. Mo. 2015) (quoting *Hill v. United States*, 368 U.S. 424, 426–27 (1962)); *see also* R. Governing § 2255 Proceedings 1. The petitioner bears the burden of proof as to each asserted ground for relief. *Golinveaux v. United States*, 915 F.3d 564, 567 (8th Cir. 2019) (citation omitted).

### A.  A Petitioner Alleging Ineffective Assistance of Counsel Must Show Deficient Performance and Prejudice to Prevail.

"A defendant faces a heavy burden to establish ineffective assistance of counsel pursuant to section 2255." *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000) (quotation omitted). Ineffective-assistance claims are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "This standard requires [a petitioner] to show that his trial counsel's *performance* was so deficient as to fall below an objective standard of reasonable competence, and that the deficient performance *prejudiced* his defense." *Nave v. Delo*, 62 F.3d 1024, 1035 (8th Cir. 1995) (quotation omitted) (emphasis added). "Failure to satisfy either [the performance or

prejudice] prong is fatal to the claim." *Cole v. Roper*, 579 F. Supp. 2d 1246, 1263 (E.D. Mo. 2008) (citation omitted). Indeed, "[i]f the petitioner makes an insufficient showing on one component, the court need not address both components." *Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir. 2000).

Under the performance prong, courts "apply an objective standard [to] determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Nave*, 62 F.3d at 1035 (quotation omitted). In doing so, a court must be careful to "avoid the distorting effects of hindsight . . . by looking at the circumstances as they must have appeared to counsel at the time." *Rodela-Aguilar v. United States*, 596 F.3d 457, 461 (8th Cir. 2010) (citation omitted). The starting point for this analysis is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* (citation omitted). Counsel's strategic decisions "made after a thorough investigation of law and facts . . . are virtually unchallengeable," even if those decisions prove unwise. *Strickland*, 466 U.S. at 690.

Under the prejudice prong, the petitioner must show "a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different." *Nave*, 62 F.3d at 1035 (quotation omitted). This inquiry depends on the likelihood of success if the alleged error were corrected. *Hill*, 474 U.S. at 59. "[I]f there is no reasonable probability that the motion would have been successful, [the movant] cannot prove prejudice." *DeRoo*, 223 F.3d at 925.

**B.    An Evidentiary Hearing is Unwarranted if the Allegations—Taken As True— Would Not Justify Relief.**

"A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless 'the motion and the files and the records of the case conclusively show that [he] is entitled to no relief.'" *Holder v. United States*, 721 F.3d 979, 993 (8th Cir. 2013) (quoting 28 U.S.C. § 2255(b)). "No hearing is

required where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *United States v. Anjulo-Lopez*, 541 F.3d 814, 817 (8th Cir. 2008) (quotation omitted). For instance, "[a] district court need not hold an evidentiary hearing if the facts alleged, taken as true, would not justify relief." *Larson v. United States*, 905 F.2d 218, 221–22 (8th Cir. 1990) (citation omitted). Moreover, in conducting this inquiry, courts may not give weight to "conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets." *Simmons v. United States*, No. 1:16-CV-101 SNLJ, 2016 WL 5941929 (E.D. Mo. Oct. 13, 2016) (citation omitted); *see also Ford v. United States*, 917 F.3d 1015, 1026 (8th Cir. 2019) (reaffirming long-standing rule of dismissing allegations that "are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."). In the ineffective-assistance context, a court "must consider the validity of a petitioner's allegation of ineffective assistance of counsel" in light of the record to determine whether an evidentiary hearing is necessary. *Holder*, 721 F.3d at 994 (quotation and internal alterations omitted); *Blankenship v. United States*, 159 F.3d 336, 337 (8th Cir. 1998).

### C. Under Eighth Circuit Precedent, This Court is Precluded from Considering Untimely Claims Filed More Than One Year After the Supreme Court Denies a Writ of Certiorari.

A one-year time-limit applies to a motion under § 2255, starting from the latest of the following: (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting

18

the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f).

"Motions under § 2255 are subject to a one-year limitations period. In practice, this usually means that a prisoner must file a motion within one year of 'the date on which the judgment of conviction becomes final.'" § 2255(f)(1). *Mora-Higuera v. United States*, 914 F.3d 1152, 1154 (8th Cir. 2019) (citing 28 U.S.C. § 2255(f)(1)); *see also United States v. Craycraft*, 167 F.3d 451, 456 (8th Cir. 1999) ("Section 2255 motions must now be filed within one year of the date the conviction becomes final, except in circumstances not applicable to this case.").

The date the conviction becomes final, for purposes of § 2255(f)(1), is the date when the time for filing an appeal expires. *See Anjulo-Lopez v. United States*, 541 F.3d 814, 816 n.2 (8th Cir. 2008). Where, as here, the movant does seek a writ of certiorari, the one-year clock begins on the date the Supreme Court denies the petition for a writ or rules on the case on the merits, regardless of whether rehearing or reconsideration in the Supreme Court is sought. *See Thomas v. United States*, No. 4:08-CV-599 (CEJ), 2009 WL 1749042 (E.D. Mo. June 19, 2009) ("[T]he one-year limitation period for filing § 2255 motions begins to run from the date on which certiorari is denied——not from the date on which the petition for rehearing is denied."); *see also Campa-Fabela v. United States*, 339 F.3d 993 (8th Cir. 2003) (collecting cases).

Also where, as here, a petitioner raises untimely arguments, those arguments can be considered by this Court only if the claim asserted in the original pleading and the claim asserted in the amended pleading arose out of the same conduct, transaction, or occurrence. *See* Fed. R. Civ. P. 15(c)(2); *see also United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir. 1999) (applying "relate-back" doctrine); *Mandacina v. United States*, 328 F.3d 995, 999–1002 (8th Cir. 2003) (same); *Taylor v. United States*, 792 F.3d 865, 869–71 (8th Cir. 2015) (same).

19

"To arise out of the same conduct, transaction, or occurrence, the claims must be tied to a common core of operative facts." *Taylor*, 792 F.3d at 869. "New claims must arise out of the "same set of facts" as the original claims, and "[t]he facts alleged must be specific enough to put the opposing party on notice of the factual basis for the claim." *Id.* (citing *Mandacina*, 328 F.3d at 1000 (noting that the facts of the claim must also be similar in both time and type)). For example, "it is not enough that both an original motion and an amended motion allege ineffective assistance of counsel during a trial." *Dodd v. United States*, 614 F.3d 512, 515 (8th Cir. 2010). When claims are so general that it cannot be discerned if the original motion would have provided notice of the amended claim, the claim cannot relate back. *Taylor*, 792 F.3d at 870.

Under Eighth Circuit precedent, this Court should dismiss motions that are not filed within the time limits. *See Moore v. United States*, 173 F.3d 1131, 1133–35 (8th Cir. 1999); *Campa-Fabela v. United States*, 339 F.3d 993, 993-94 (8th Cir. 2003). Although "not a jurisdictional bar," *Moore*, 173 F.3d at 1134, a district court is precluded from considering the merits of untimely claims where, as here, the Government timely raises a statute-of-limitation defense. *See United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir. 1999).[6]

---

[6] See also *Barreto-Barreto v. United States*, 551 F.3d 95, 100 (1st Cir. 2008) (nothing that "[n]othing in the language of § 2255 suggests that jurisdictional challenges are exempt from the one-year limitations period" and holding that such petitions "are not exempt from § 2255's filing deadline"); *United States v. Scruggs*, 691 F.3d 660, 666 (5th Cir. 2012) ("Jurisdictional claims are subject to the one-year limitations period for § 2255 claims, and such claims may only form the basis for second or successive § 2255 motions if movants meet the requirements of §§ 2244 and 2255(h)."); *see also United States v. Elso*, 571 F.3d 1163, 1166 (11th Cir. 2009) (after the appeal concluded, the case was no longer pending); *United States v. Wolff*, 241 F.3d 1055, 1056 (8th Cir. 2001) (same).

## IV.    Analysis

### A.    Craig's "Ground One" Arguments as to His Pretrial Counsel Should Be Rejected as Conclusory, Factually Inaccurate, and Non-Prejudicial.

In Ground One, Craig raises the following conclusory allegations against his counsel for her actions taken before his trial:

> (1) Failing to adequately communicate with Craig and inform him of the relevant circumstances and likely consequences of entering a guilty plea as opposed to proceeding to trial; (2) Failing to file any substantive pretrial motions and an adequate and independent pretrial investigation; and (3) Failing to make any meaningful effort to negotiate a favorable plea agreement with the government.

Civil Case, Doc. #1, p. 4. These claims—bereft of a single specific fact, even as supplemented in the Memorandum of Law—are exactly the sort of conclusory allegation for which habeas relief is precluded. "A presumption exists that counsel is competent, and the petitioner bears a heavy burden in overcoming the presumption. [Petitioner's] conclusory allegations are insufficient to rebut this presumption of competency." *Carpenter v. United States*, 720 F.2d 546, 548 (8th Cir. 1983).

Craig's Gound One claims also fail because they are belied by the record. In fact, his first and third arguments—that his counsel failed to convey and negotiate plea offers—are directly rebutted by the transcript of Craig's *Frye* Hearing. *See* Criminal Case, Doc. #181. During that *Frye* hearing, Craig was fully informed of the plea offer—which included an agreement to dismiss counts—and Craig rejected the offer, stating "I'm not going to plead guilty to something I didn't do." Status/*Frye* Tr." at p. 21. His second argument under Ground One is similarly belied by the record. Indeed, Craig now claims that his counsel was deficient for "[f]ailing to file any substantive pretrial motions," but the record clearly shows that his counsel filed a lengthy Motion to Suppress. *See* Criminal Case, Doc. #96, at pp. 8–9.

In addition, Craig's Ground One claims also fail to establish prejudice. Under the prejudice prong, Craig must show "a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different." *Nave*, 62 F.3d at 1035 (quotation omitted). Because Craig fails to establish that he suffered prejudice related to his allegations as to deficient performance, his claims fail as a matter of law. Indeed, Craig cannot establish prejudice with only "*post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Lee v. United States*, 582 U.S. 357, 369 (2017). "Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id. See also United States v. Frausto*, 754 F.3d 640, 644 (8th Cir. 2014) (holding that the Section 2255 petitioner's "bare assertion that he would not have pled guilty is insufficient to allow for an intelligent assessment of the likelihood that Frausto would not have pled guilty and is far too speculative to warrant § 2255 relief"). Therefore, this Court should deny Craig's claims for relief that he raises in Ground One of his Section 2255 Motion.

**B.    Craig's "Ground Two" Arguments as to His Trial Counsel Should Be Rejected as Conclusory, Factually Inaccurate, and Non-Prejudicial.**

In Ground Two, Craig raises the following conclusory allegations against his counsel for her actions taken during his trial:

> (1) Failing to advise Craig of the overall defense strategy, including any available affirmative defenses and the theory of the defense; and
> (2) Failing to subpoena and present defense witnesses whose testimony could have supported Carig's innocence or bolstered his defense.

Civil Case, Doc. #1, p. 5. Like his arguments in Ground One, these claims are similarly conclusory and therefore non-cognizable. *See Carpenter*, 720 F.2d at 548. Indeed, Craig fails to explain— with any level of specificity—exactly what affirmative defenses, defense theories, or defense witness testimony could have been presented. Without alleging the specific deficient performance

of his attorney, he cannot prevail on his ineffective assistance of counsel claims. This Court should reject his Ground Two claims for that reason alone.[7]

In addition, all of Craig's Ground Two arguments also fail to make the required showing of prejudice. *Nave*, 62 F.3d at 1035. Put simply, Craig cannot make the required showing of prejudice because he fails to articulate the precise affirmative defenses, defense theories, or defense witness testimony that could have been presented—much less the impact of such unspecified arguments and evidence. While Craig may claim that he would have made different decisions based on the unspecified arguments and evidence he raises, mere "*post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies" are insufficient to show prejudice. *Lee v*, 582 U.S. at 369 (2017).

### C. Craig's "Ground Three" Arguments as to His Sentencing Counsel Should Be Rejected as Conclusory. Factually Inaccurate, and Non-Prejudicial.

In Ground Three, Craig raises the following conclusory allegations against his counsel for her actions taken during his sentencing:

> (1) File substantive objections to the PSR deprived Craig of effective assistance of sentencing counsel under the Sixth Amendment, a fair and just sentence; and
> (2) Failure to argue for mitigation of punishment and object to his sentence being substantively unreasonable.

R. Doc. 246, p. 6. Like his arguments in Grounds One and Two, these claims are similarly conclusory and therefore non-cognizable. *See Carpenter*, 720 F.2d at 548. Indeed, Craig fails to explain which PSR objections or sentencing arguments could have been made much less the impact that those unspecified arguments and objections could have had on his sentencing.

---

[7] Craig's second argument under Ground Two is also factually inaccurate. As the trial record makes clear, his trial counsel did retain and call as a witness an expert, who disputed that R.P. died as a result of the fentanyl distributed by Craig.

These arguments also fail to make the required showing of prejudice. *Nave*, 62 F.3d at 1035. Indeed, Craig fails to establish that he suffered prejudice related to his allegations as to deficient performance. For example, Craig does not provide this court with any evidence as to which PSR objections his counsel could have raised. In addition, Craig's second argument under Ground Three is directly contradicted by the record. While Craig claims that his sentencing counsel failed to make mitigation arguments, he ignores that his counsel filed a twelve-page sentencing memorandum, which detailed the mitigation evidence and requested a below-Guidelines sentence. Criminal Case, Doc. #206.

### D. Craig's Arguments Raised in His Memorandum of Law—Grounds Four through Twelve—Are Untimely and Must be Dismissed.

Under Eighth Circuit precedent, Craig's untimely grounds raised in his Memorandum of Law are not properly before this Court and should therefore be dismissed. As detailed above, these claims are untimely because they were raised more than a year after the Supreme Court denied Craig's petition for writ of certiorari. *See supra* §§ II (E), III (D). Though Craig's original Section 2255 Motion was filed right before the deadline, the additional nine grounds raised in his Memorandum of Law do not "relate back" to any the claims raised in the original Section 2255 Motion and thus are untimely. *See Taylor v. United States*, 792 F.3d 865, 869–71 (8th Cir. 2015) (making clear that a motion to amend filed after the one-year statute of limitations is considered timely only if the amended claims "relate back" to those previously raised timely claims).

When confronted with this issue in *Taylor*, the Eighth Circuit held that the district court could not consider similarly untimely claims from the Section 2255 movant that did not relate back to his original motion. *Id.* In *Taylor*, the movant's "original claim referred specifically to the failure to request a single specific jury instruction," but "[t]he amended claim referred generally to Taylor's primary defense theory throughout the trial." *Id.* at 870. Much like the claims here, the

court in *Taylor* found that "[a]ny similarities between these two claims are so general that we cannot say they arise out of the same set of facts or that the original petition would have provided notice of Taylor's amended claim." *Id.* ("The entire trial is not one transaction or occurrence for the purposes of Rule 15(c)."); *see also Mandacina v. United States*, 328 F.3d 995, 1002 (8th Cir. 2003) (holding district court did not abuse its discretion in finding amended claim of pre-trial error did not relate back to original claim of separate pre-trial error, as claim relating to failure to investigate some evidence was generally similar in time but not type to claim relating to failure to discover other evidence).

Applying that standard here, Craig's nine untimely ineffective assistance of counsel grounds raised in his Memorandum of Law do not arise out of the same set of facts as the claims he raised in his original motion. Like the arguments that the Eighth Circuit held could not be considered in *Taylor*, Craig's original claims here are so general and conclusory that the United States did not have notice of his untimely claims. Therefore, this Court should dismiss all of the additional claims raised in Craig's Memorandum of Law because they are not properly before this Court.

### E. Not Only Are Craig's Untimely Grounds in his Memorandum of Law Barred by the Limitations Period Under Section 2255(f)(1), But They Are Also Meritless.

Because Craig's untimely grounds raised in his Memorandum of Law are time-barred and not properly before the Court, this Court should reject those arguments for that reason alone. Those claims are also legally baseless and factually inaccurate.

### i) Craig's Arguments Raised in Grounds Four Through Seven—Relating to the Performance of His Appellate Counsel—Have Already Been Rejected By This Court.

In Grounds Four through Seven, Craig raises the following untimely arguments as to his appellate counsel's alleged ineffective assistance of counsel:

GROUND FOUR - INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL (Failure to challenge Rule 33 denial and raise constitutional violations)

GROUND FIVE - INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL (Failure to challenge unreliable medical cause of death evidence)

GROUND SIX - INEFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSEL (Speedy Trial Act violations)

GROUND SEVEN - INEFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSEL [sufficiency of the evidence regarding victim N.B.]

*See* Doc. 9. But all of the arguments that Craig complains were not raised by his appellate attorney were—in fact—actually raised in front of this Court during the criminal proceedings, and this Court specifically rejected each of his arguments. *See* Criminal Case, Doc. 240 (Order Denying Craig's Motion for New Trial), *See* Criminal Case, Doc. 225, p. 181 (Order Denying Craig's Motion for Judgement of Acquittal), Status/*Frye* Hearing Transcript ("Status/*Frye* Tr.") at p. 19. Because these arguments are all legally baseless, Craig cannot make the required showings of deficient performance or prejudice.

**ii) Craig's Arguments Raised in Grounds Eight Through Twelve Are Also Meritless.**

In Grounds Eight through Twelve, Craig raises the following untimely arguments as to his pre-trial and trial counsel's alleged ineffective assistance of counsel:

GROUND EIGHT- INEFFECTIVE ASSISTANCE FOR FAILURE TO OBJECT TO RULE 404(b) (Failure to Investigate, Subpoena, Confront, and Challenge Causation and Insufficiency of the Evidence Related to Alleged Bodily Injury of [victim L.T.])

GROUND NINE - INEFFECTIVE ASSISTANCE FOR FAILURE TO IMPEACH GOVERNMENT WITNESSES

GROUND TEN - INEFFECTIVE ASSISTANCE REGARDING PROSECUTORIAL MISCONDUCT AND FALSE TESTIMONY [regarding Craig's post-arrest interview]

26

GROUND ELEVEN - INEFFECTIVE ASSISTANCE REGARDING FOURTH AMENDMENT VIOLATIONS (Failure to challenge unlawful search, seizure, warrant defects, and chain of custody Ineffective Assistance of Trial Counsel for Failing to Challenge Biased Juror and For Allowing a Federal Probation Officer With Prior Professional Ties to the Prosecutor to Serve on the Jury)

GROUND TWELVE - INEFFECTIVE ASSISTANCE FOR JURY-RELATED FAILURES (Ineffective Assistance of Trial Counsel for Preventing Defendant From Testifying and Failing to Prepare Defendant to Testify Regarding Police Misconduct and a Coerced Confession)

Not only are these arguments untimely and therefore not properly before this Court, but Craig also fails to make the required showing of prejudice for any of his claims. As to his claims regarding potential defense witnesses that he now claims should have been called (Victim L.T., "Glenn," and Brian Walker), Craig does not establish what exculpatory testimony any of those individuals could have provided. In fact, Craig does not—and cannot—state any facts that those witnesses could have established as part of his defense.[8] Without such a showing, Craig's claims cannot prevail.

Similarly, Craig also cannot establish any prejudice from his baseless claims about jury selection or false testimony that he might have provided. As this Court has already recognizes, the evidence at trial establishing Craig's guilt was overwhelming. Additionally, as it relates to Craig's claim about his trial counsel's use of peremptory strikes during jury selection, his claim fails because "the record does not indicate that 'the individual jurors who tried [Craig] were not impartial." *United States v. Lee*, 715 F.3d 215, 223 (8th Cir. 2013) (quoting *Young v. Bowersox*, 161 F.3d 1159, 1161 (8th Cir. 1998)). *See* Criminal Docket, no. 223 (voir dire transcript). Because "[n]othing in the record shows that the jury made its decisions on anything other than the evidence

---

[8] Craig also ignores the signed statement—from before L.T. passed away, which was produced in discovery—where L.T. identified Craig as the individual who provided him with fentanyl before L.T.'s overdose.

presented," Craig's ineffective assistance of counsel claim fails for that reason alone. *Lee*, 715 F.3d at 223.

Additionally, Craig's claims about the perjured testimony that he now says he wanted to provide at his suppression hearing and trial are also meritless. Indeed, Craig's false claims about his arrest were made for the first time in his untimely Memorandum of Law—after more than five years of litigation—and are directly rebutted by Craig's earlier statements to the Court about his arrest. In fact, in his earlier Section 1983 Complaint about his arrest in this case, Craig falsely claimed that TFO Daniel Plumb "threatened" him. *See* Ledra Andre Craig v. Daniel Plumb et al., No. 4:22-cv-00784-RLW, Doc. 6 (Aug. 31, 2022). But Craig now claims—falsely and for the first time in more than five years since his case began—that it was not TFO Plumb but actually an unidentified additional officer in the backseat of TFO Plumb's vehicle who "threatened" him. *See* Doc. 9, p. 13. Such objectively false statements which are directly belied by the record must be rejected.

### E. The Court Need Not Hold a Hearing.

Because all arguments raised can be denied from the existing record, the Court need not hold a hearing. "A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless 'the motion and the files and the records of the case conclusively show that [he] is entitled to no relief.'" *Holder*, 721 F.3d at 993 (quoting 28 U.S.C. § 2255(b)). The records of the case are clear that Craig's arguments are frivolous and that his Section 2255 Motion should be denied.

## V.    Conclusion

For the reasons set forth above, the United States respectfully requests that this Court deny Craig's Section 2255 Motion without a hearing.  The United States further requests that the Court deny Craig a certificate of appealability because he has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

Respectfully submitted,

THOMAS C. ALBUS
United States Attorney

 s/ *Derek J. Wiseman*
DEREK J. WISEMAN, #67257MO
Assistant United States Attorney
SAMANTHA J. REITZ, #73579MO
Special Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, MO 63102
(314) 539-2200

29

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 9, 2026, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

A copy of the foregoing is also being mailed to Movant at:

Ledra A. Craig
50161-044
FCI Bennettsville
Federal Correctional Institution
Inmate Mail/Parcels
P.O. BOX 52020
Bennettsville, SC 29512


 s/ *Derek J. Wiseman*
DEREK J. WISEMAN, #67257MO
Assistant United States Attorney