UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LEDRA A. CRAIG, | ) |
| | ) |
| Movant, | ) |
| | ) |
| v. | ) No. 4:25-cv-01530-HEA |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**REPLY TO UNITED STATES OF AMERICA'S RESPONSE TO PETITIONER'S
MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE (28 U.S.C. § 2255)**

COMES Movant, Ledra A. Craig ("Mr. Craig"), appearing *pro se,* and files his Reply to

United States of America's Response to Petitioner's Motion to Vacate, Set Aside, or Correct

Sentence (28 U.S.C. § 2255), and would show as follows:

**INTRODUCTION**

The government asks this Court to deny Mr. Craig's § 2255 motion without a hearing by

labeling his claims "conclusory," "belied by the record," "untimely," or "already rejected." See

Gov't Resp., Doc. 10 at 18, 21–24, 24–28.¹ But the Response has a fatal omission: it never confronts

the controlling Supreme Court rule for "death resulting / serious bodily injury resulting" counts—

*Burrage v. United States,* 571 U.S. 204 (2014), which requires but-for causation for § 841(b)(1)(c).

The Response never identifies any jury instruction requiring the jury to find but-for causation, and

it never points to medical/toxicology proof establishing but-for causation on the "results" element.

---

"Doc." refers to the Docket Report in the United States District Court for the Eastern District of Missouri,
Eastern Division in Civil No. 4:25-cv-01530-HEA, which is immediately followed by the Docket Entry number and Page
Number where appropriate.

That omission matters because this case is, in substance, a *Burrage* case. The government acknowledges the indictment included multiple "results" counts—two "serious bodily injury" counts and one "death resulting" count. See Doc. 10 at 6. Under *Burrage*, the Government cannot obtain or sustain a "results" conviction (or the enhanced punishment that comes with it) by proving only that fentanyl contributed to, played a role in, or was one factor among many in a mixed-drug event. The jury must be required to find beyond a reasonable doubt that the "results" element is satisfied by but-for causation—i.e., that the victim would not have died (or suffered serious bodily injury) but for use of the drug attributed to the defendant.

The Eighth Circuit applies *Burrage* exactly that way. In *United States v. Ford*, 750 F.3d 952 (8th Cir. 2014) (per curiam), after the Supreme Court's *Burrage* decision, the Eighth Circuit reversed a "death resulting" conviction where the proof supported only "contribution" in a mixed-drug death rather than but-for causation.

Mr. Craig appears *pro se*, so his pleadings must be liberally construed and held to less stringent standards than filings drafted by counsel. See *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). This matters to the government's "conclusory" and "notice" arguments [Doc. 10 at 20–25] because *pro se* pleadings are evaluated for substance, not perfection.

At minimum, an evidentiary hearing is required because § 2255(b) commands a hearing unless the record conclusively shows no entitlement to relief, and *Burrage*-causation disputes turn on proof that typically lies in medical/toxicology evidence and credibility disputes not resolvable on paper. See Doc. 10 at 18, 28 (Gov't "no hearing" request).

## I.   THE GOVERNMENT'S THRESHOLD PROCEDURAL ARGUMENTS DO NOT JUSTIFY DISMISSAL

### A.   This Is a Constitutional Ineffective-assistance Case; the Government's "Non-cognizable" Authorities Are Misplaced.

The government cites cases like *Addonizio*, *Hill*, and *Sun Bear* to suggest § 2255 relief is limited or unavailable. Those authorities are aimed at non-constitutional sentencing complaints or guideline-only disputes.

That is not this case. Mr. Craig's core claim is Sixth Amendment ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984), focused on counsel's failure to litigate the statutory element that drives the enhanced penalty: whether death (or serious bodily injury) resulted from use of the distributed drug under § 841(b)(1)(C). When counsel fails to test an essential element and the jury is not required to find what the law requires, that is a constitutional conviction/sentence defect, not a guideline quibble.

Also, ineffective assistance claims are expressly proper in § 2255. *Massaro v. United States*, 538 U.S. 500, 504–05 (2003).

### B.   The Memorandum Is an Amplification of the Timely Motion and Relates Back under Rule 15(c); the Government's Rule 15 Cases Are Distinguishable

The government argues the Memorandum "adds nine new claims" and is time-barred, relying on Craycraft/Taylor/Mandacina/Dodd. See Doc. 10 at 19–20, 24–25. But that argument fails for three independent reasons.

1.      *Mayle v. Felix*, 545 U.S. 644, 659 (2005) controls, and the government skips it. The Supreme Court holds that Rule 15(c) relation-back turns on whether the amended allegations share a "common core of operative facts," not whether they arise from the same trial in

the abstract. The government cites Eighth Circuit applications of that standard [Doc. 10 at 19–20], but its conclusion ("no notice") does not follow from the record here.

2.      The Memorandum does what *Mayle* permits: it supplies detail and authority for the same prosecution-specific failures—especially causation. The Memorandum repeatedly anchors its claims in the same central factual and legal nucleus: (i) "results" counts (death/serious bodily injury), (ii) medical/toxicology causation proof, (iii) counsel's failure to litigate Burrage but-for causation at trial and on appeal, and (iv) prejudice from the enhanced "results" findings. Those facts are not "separate in both time and type" from the original filing; they are the same operative episode—how the Government proved (or failed to prove) the "results" element and how counsel handled that proof.

3.      *Pro se* liberal construction defeats the government's hyper-technical "notice" argument. The Government's theory depends on treating the timely filing as if it must read like a lawyer-drafted pleading. See Doc. 10 at 20, 25. But Mr. Craig is *pro se*, so the Court construes his pleadings liberally. See *Erickson*, 551 U.S. at 94; Haines, 404 U.S. at 520–21. When the timely filing identified ineffective assistance tied to the prosecution and conviction—particularly the "results" enhancements—Rule 15(c) is satisfied by later factual/legal amplification that stays within that same core.

Fallback request: Even if the Court finds any discrete allegation does not relate back, the proper remedy is not wholesale dismissal. The Court may (i) allow amendment, (ii) sever any non-related claim, and (iii) proceed on the timely core—especially the *Burrage* but-for causation claim that drives the "results" counts [Doc. 10 at 6] and the enhanced punishment.

4

## C.   The Government's "No Hearing" Request Conflicts with § 2255(b) and Supreme Court Hearing Precedent

The government asks the Court to deny relief without a hearing. See Doc. 10 at 18, 28. But § 2255(b) requires a hearing unless the motion and record conclusively show the prisoner is entitled to no relief. The Supreme Court has repeatedly held that where a claim turns on disputed facts, credibility, or matters outside the courtroom record, a paper denial is improper. See *Machibroda v. United States*, 368 U.S. 487, 494–95 (1962).

Here, the government's own Response demonstrates the disputes are factual and material: it disputes prejudice, calls allegations "conclusory," and invokes record-based rebuttals. See Doc. 10 at 21–24, 27–28. But the core *Burrage* question—whether the "results" element was proven under the correct but-for standard—depends on medical/toxicology proof and how counsel litigated it. Those issues cannot be conclusively resolved on this paper record, especially given Mr. Craig's *pro se* status and the requirement of liberal construction.

At minimum, a hearing is needed to resolve:

> 1.   Whether the government's proof satisfied *Burrage* but-for causation on the "results" counts [Doc. 10 at 6];
>
> 2.   Whether the jury was properly instructed on the "results" element;
>
> 3.   What medical/toxicology testimony competent counsel would have developed;
>
> 4.   Whether counsel's omissions were strategic or unreasonable; and
>
> 5.   Whether there is a reasonable probability of a different outcome under *Strickland*.

## II.   THE MERITS: THIS IS A BURRAGE CASE, AND COUNSEL'S FAILURES SATISFY STRICKLAND

### A.   Governing law: Burrage requires but-for causation for "death or serious bodily injury results"

In *Burrage*, the Supreme Court held that for § 841(b)(1)(C)'s enhanced penalty, "results from" requires actual but-for causation, at least where the drug is not an independently sufficient cause of death/serious injury. 571 U.S. at 218–19.

The Eighth Circuit applies *Burrage* strictly. After the Supreme Court vacated the Eighth Circuit's earlier affirmance, the Eighth Circuit reversed a "death resulting" conviction because the government's proof showed only that heroin was a contributing factor in a mixed-drug death, not the but-for cause. See *Ford*, No. 11-3736, at 2–5. That is the template here.

*Burrage* is not limited to "death resulting." It expressly addresses "death or serious bodily injury results" under § 841(b)(1)(C). And the government concedes this case included two serious-bodily-injury "results" counts and one death-resulting count. See Doc. 10 at 6. That is why *Burrage* supplies the controlling legal yardstick for the most punishment-driving element in this prosecution.

The "death resulting / serious bodily injury resulting" fact is not a guideline detail—it is a statutory element that increases the legally authorized punishment under § 841(b)(1)(C). Because it raises the mandatory minimum and maximum exposure, it must be submitted to the jury and proved beyond a reasonable doubt. When the jury is not instructed on the correct legal standard for that element (*Burrage* but-for causation), the verdict on the "results" element cannot stand, and counsel's failure to demand the correct instruction and to challenge sufficiency is a textbook constitutional defect.

6

**B.  Deficient Performance: Competent Counsel Would Have Litigated Burrage Causation as the Central Element**

Under *Strickland*, counsel must make reasonable investigations and raise the key legal defenses. 466 U.S. at 690–91. When the case turns on a single penalty-triggering element—death resulting—competent counsel must (1) demand correct jury instructions, (2) test medical causation, (3) move for acquittal if but-for proof is missing, and (4) raise the issue on appeal.

Counsel's failures here were deficient where counsel:

> 1.  Failed to request a *Burrage* but-for instruction (or failed to object if the instruction permitted conviction based on "contributing factor" / mixed-drug causation);
>
> 2.  Failed to develop expert/medical proof to challenge but-for causation;
>
> 3.  Failed to press sufficiency (Rule 29) focused on but-for causation; and/or
>
> 4.  Failed to raise *Burrage* sufficiency/instruction error on appeal.

The Government's Response largely treats this as a generic IAC filing and never answers *Burrage*. That is fatal, because the claim is not "counsel could have done better in general." The claim is: counsel allowed conviction and enhanced punishment without the law's required causation proof.

**C.  Prejudice: There Is a Reasonable Probability of a Different Outcome (At Least on the "Death Resulting" Enhancement)**

Prejudice under *Strickland* is a "reasonable probability"—a probability sufficient to undermine confidence in the outcome. 466 U.S. at 694.

In a death-resulting case, prejudice is straightforward where the government's proof is consistent with "contribution" but not but-for causation, because *Burrage* draws that exact line. In

*Ford*, the Eighth Circuit held the government proved only that the drug was one of multiple contributing factors and reversed the "death resulting" conviction for lack of but-for proof. See *Ford*, at 4–5.

Here, if the jury was allowed to convict on a "mixed drug," "aggregate force," or "contributing factor" theory—or if the medical evidence could not establish "would have lived but for"—then there is at least a reasonable probability:

> 1.  the jury would not have found the "death resulting" element beyond a reasonable doubt; or
>
> 2.  the Court would have set aside the enhancement / entered judgment on a lesser included offense; and
>
> 3.  Mr. Craig's sentencing exposure would have been dramatically lower.

Prejudice is not speculative here because the "results" finding drives the statutory penalty range. If the "death resulting" (or "serious bodily injury resulting") element falls under *Burrage*, the enhanced punishment tied to that element falls with it—meaning the legally authorized punishment is materially different. That kind of statutory penalty swing is exactly the "reasonable probability of a different outcome" Strickland requires. That is classic *Strickland* prejudice.

### D.  The Government's "Overwhelming Evidence / Already Rejected" Refrain Is Not a Burrage Answer

The government repeatedly argues that claims fail because the evidence was "overwhelming," claims are "conclusory," or issues were "already rejected." See Doc. 10 at 21–24, 26–28. That is not a response to *Burrage*.

1.  "Overwhelming evidence" of distribution is not "but-for causation" evidence. Burrage makes a narrow, strict causation rule the government must meet beyond a reasonable doubt on "results" counts: the victim would not have died (or suffered serious bodily

injury) but for use of the drug distributed by the defendant. Evidence that fentanyl was present, that drug use occurred, or that multiple substances were involved does not satisfy the "results" element unless the proof establishes the required but-for causal link.

2.      The government never identifies where the jury was required to find *Burrage* but-for causation. In its merits discussion, the government focuses on generalized *Strickland* principles and "conclusory" labels [Doc. 10 at 21–24] and on timeliness [Doc. 10 at 19–20, 24–25], but it never demonstrates that the jury's "results" findings were actually anchored to the *Burrage* but-for standard.

3.      "Already rejected" is a merits dodge—and it's aimed at the wrong thing. The government says Grounds Four through Seven are meritless because issues were raised earlier and rejected. See Doc. 10 at 26. But Mr. Craig's claim is not "the district court previously ruled against me"; it is that counsel was ineffective for failing to litigate and preserve *Burrage*-compliant causation—particularly where the government's proof on "results" rested on contested medical/toxicology foundations and where the but-for standard is outcome-determinative. *Burrage* errors are not cured by rhetoric about the "overall strength" of the case; Burrage is a rule about what must be proven and found.

4.      *Ford* shows why this matters in mixed-drug or medically contested "results" cases. In *Ford*, the Eighth Circuit reversed a "death resulting" conviction because the proof supported only "contribution" rather than but-for causation. That is exactly why the government must meet *Burrage* head-on here—and why summary denial is improper.

9

### III.    THE "SERIOUS BODILY INJURY" THEORY FAILS FOR THE SAME REASON (AND COUNSEL'S OMISSIONS WERE PREJUDICIAL)

The government attempts to dispose of the "late" grounds by saying Mr. Craig "does not establish what exculpatory testimony" missing witnesses would have offered and therefore cannot show prejudice. See Doc. 10 at 27. That talking point does not answer Mr. Craig's serious-bodily-injury *Burrage* claim, because the Bruno problem is not a "missing witness" problem—it is a missing element problem. When the enhanced penalty turns on whether a drug "resulted" in serious bodily injury, the Constitution requires proof sufficient for a rational juror to find but-for causation beyond a reasonable doubt. See *Burrage v. United States*, 571 U.S. 204, 210–11, 218–19 (2014); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). No amount of "overwhelming evidence" about bad facts can substitute for the one thing *Burrage* demands: proof that without the distributed drug, the serious bodily injury would not have happened. See *Burrage*, 571 U.S. at 218–19.

That is exactly why the government's blanket "no prejudice" argument [Doc. 10 at 27] is misplaced as applied to the Nick Bruno serious-bodily-injury theory. The record already contained the key exculpatory fact: Mr. Bruno—the Government's own alleged victim—testified under oath that he had never used opioids (including heroin or fentanyl) and did not ingest illegal substances on the day of the supposed overdose. And yet the prosecution offered no doctor, no toxicologist, no medical causation proof, and no scientific confirmation that Mr. Bruno even ingested fentanyl—much less that fentanyl allegedly distributed by Mr. Craig was the but-for cause of any serious bodily injury. Where the alleged victim denies ingestion and the government supplies no competent medical proof tying fentanyl to a serious bodily injury event, the government has not met *Burrage's* causation requirement as a matter of law. See *Burrage*, 571 U.S. at 218–19; *Jackson*, 443

U.S. at 319.

This is also why the government's "you didn't show what witnesses would say" point [Doc. 10 at 27] misses the mark. Mr. Craig's Bruno claim does not depend on speculation about what a hypothetical witness might have said. It turns on what the government did not prove: ingestion + but-for medical causation. *Burrage* draws a bright line between "contributed" and "but-for." 571 U.S. at 218–19. When the government's proof never crosses that line, counsel's failure to press sufficiency and/or proper *Burrage* instructions is prejudicial.

Prejudice is especially clear at the appellate-counsel level. Appellate counsel is ineffective when she omits a strong, outcome-determinative issue and there is a reasonable probability the appeal would have come out differently had the issue been raised. See *Strickland v. Washington*, 466 U.S. 668, 694 (1984); *Smith v. Robbins*, 528 U.S. 259, 285–86 (2000); *Becht v. United States*, 403 F.3d 541, 546 (8th Cir. 2005). A *Burrage/Jackson* sufficiency challenge to an enhanced "serious bodily injury results" theory—where the alleged victim denied ingestion and the government supplied no toxicology/medical causation proof—is exactly the kind of claim that is not "generic IAC," not "harmless," and not answered by the government's catch-all "overwhelming evidence" refrain. See Doc. 10 at 27. At minimum, Mr. Craig has shown a reasonable probability that competent litigation of *Burrage* causation (at trial and on appeal) would have changed the outcome on the serious-bodily-injury component and the punishment tied to it. See *Strickland*, 466 U.S. at 694.

The government says Mr. Craig "does not establish what exculpatory testimony" the missing witnesses would have provided and therefore cannot show prejudice. See Doc. 10 at 27. But Bruno himself was the exculpatory witness—he testified under oath that he did not use opioids and did not

11

ingest illegal substances that day—and the government still presented no toxicology and no competent medical evidence establishing ingestion or *Burrage* but-for causation for "serious bodily injury." In other words, this is not speculation about what a witness might have said; it is the government's failure to prove the required element, and counsel's failure to force the issue was prejudicial.

## IV.   OTHER GOVERNMENT AUTHORITIES ARE MISAPPLIED OR DO NOT RESOLVE THE DISPUTES PRESENTED

The government's "conclusory" argument is aimed at Grounds One through Three. See Doc. 10 at 21 –24 (Ground One through Three analysis). But the record shows Mr. Craig's Memorandum supplies concrete, prosecution-specific facts tied to discrete failures—especially on "results" causation—making summary dismissal improper.

### A.   Ground One (Pretrial/plea) — Government's Reliance on "Conclusory" Labels Ignores the Pleaded Facts.

The government cites *Carpenter* to argue Mr. Craig pled no "specific facts." See Doc. 10 at 21. That is incorrect. The Memorandum identifies specific failures (communication, investigation, motions, and plea advice) and explains why those failures mattered in this prosecution—especially as to the "results" counts that drove exposure. See Doc. 10 at 6 (results counts).

### B.   Ground Two/trial Issues and Causation — the Government Never Answers Burrage.

The government treats trial issues generically [Doc. 10 at 22–23] but does not address the controlling legal element: whether "results" were proven by but-for causation. *Burrage* requires that proof for "death or serious bodily injury results." This omission alone defeats the government's request for summary denial.

### C.    Ground Three/sentencing — Prejudice Is Obvious Where "Results" Findings Drive Statutory Punishment.

The government argues "no prejudice" and points to a sentencing memorandum [Doc. 10 at 24], but that misses the point: where the conviction includes "results" counts [Doc. 10 at 6], *Burrage* causation is not a discretionary sentencing argument—it is a statutory element that controls guilt and punishment. If the "results" element was not proven and found under *Burrage*, the prejudice inquiry under *Strickland* is satisfied because the statutory exposure changes.

Mr. Craig also challenges (among other issues) jury impartiality, investigative failures, and coercion/testimony issues. The government responds by citing cases that reject conclusory § 2255 allegations. But Mr. Craig's filings are not bare labels; they identify specific failures tied to specific trial issues and the central causation element.

More importantly, even when the government cites correct legal standards, it tries to use them to avoid the necessary next step: a hearing. Supreme Court law forbids resolving credibility and material fact disputes on paper. See *Machibroda*, 368 U.S. at 494–95; *Blackledge*, 431 U.S. at 81–83.

### V.    REQUEST FOR RELIEF

For the above and foregoing reasons, Mr. Craig respectfully requests that the Court:

A.    Grant an evidentiary hearing under 28 U.S.C. § 2255(b);

B.    After hearing, vacate the judgment and sentence to the extent they rest on the legally defective "death (or serious bodily injury) resulting" enhancement applied without Burrage but-for proof; and

C.    Grant appropriate relief, including a new trial or resentencing on legally supported lesser included offenses, as justice requires.

13

Respectfully submitted,

LEDRA A. CRAIG
REG. NO. 50161-044
FCI BENNETTSVILLE
FEDERAL CORR. INSTITUTION
P.O. BOX 52020
BENNETTSVILLE, SC 29512

**CERTIFICATE OF SERVICE**

I hereby certify that on January ___, 2026, a true and correct copy of the above and foregoing Reply to United States of America's Response to Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (28 U.S.C. § 2255) was sent via First Class U. S. Mail, postage prepaid, to Derek J. Wiseman, Assistant United States Attorney and Samantha J. Reitz, Special Assistant United States Attorney at U. S. Attorney's Office, 111 South 10th Street, Room 20.333, St. Louis, MO 63102.

3-5-26

LEDRA A. CRAIG

14

CORE ARGUMENT: The original section 2255 was timely.

The affidavit + 9 IAC grounds do not raise a new claim. They clarify, amplify, and support the same ineffective-assistance theory already pleaded. Under Rule 15(c), they RELATE BACK to the original filing date. Because they relate back, NO NEW statute-of-limitations clock applies. The Government implicitly conceded this by asking for additional time to respond rather than moving to strike. A claim cannot be both procedurally proper enough to respond to and time-barred at the same time.

### CONTROLLING LAW: Rule 15(c)(1)(B) Relation Back

An amendment relates back when it arises from the same "conduct, transaction, or occurrence" set out in the original pleading. [Supreme Court: Mayle v. Felix, 545 U.S. 644(2005)]. Relation back applies where the amended claims share a "common core of operative facts" with the original claims.

### IAC Specific Rule

Courts repeatedly hold that: Additional ineffective-assistance allegations relate back when they expand or clarify counsel's failure already alleged.[SEE: U.S. v. Pittman, 209 F.3d 314(4th. Cir.), Hodge v. U.S., 554 F.3d 372(3rd. Cir.), and Davenport v. U.S., 217 F.3rd 1341(11th. CIr.)].

### GOVERNMENT'S POSITION IS LEGALLY INCONSISTENT

The Government argued: "You are 'supplementing'", then requesting additional time to respond. That matters because: If a filing is truly unauthorized or time-barred, the proper response is a motion to strike or dismiss, not a request for more time to answer. Courts treat this as a waiver or concession that the filing is procedually proper. Key principle: The Government cannot have it both ways; acknowledging the filing is proper enough to respond to, while claiming it is barred by limitations.

### MOVANT'S REPLY TO GOVERNMENT'S TIME-BAR AND "SUPPLEMENTATION" ARGUMENT

I. The Government's Time-Bar Argument Fails as a Matter of Law.

The Government's assertion that Movant's affidavit and additional ineffective-assistance claims are time-barred is legally incorrect. Movant's original section 2255 motion was timely filed. The subsequent affidavit and additional grounds do not assert new claims, but instead clarify, amplify, and support the ineffective-assistance of counsel claim already before the Court.

II. The Additional Ineffective-Assistance Grounds Relate Back Under Rule15(c).

Under Federal Rule of Civil Procedure 15(c)(1)(B), an amendment relates back when it arises out of the same conduct, transaction, or occurrence set out in the original pleading. The Supreme Court has held that relation back applies when claims share a common core of operative facts. Mayle v. Feliz, 545 U.S. 644, 659(2005). Here, all additional grounds allege ineffective assistance by the same counsel during the same criminal proceedings, invoking the same representation, strategic failures, and constitutional deficiencies raised in Movant's original motion. Courts consistently hold that additional ineffective-assistance allegations relate back where they expand upon counsel's failures already alleged. [SEE: Pittman, 209 F.3d 314; Hodge, 554 F.3d 372]. Because these claims relate back, they are deemed filed as of the date of the original section 2255 motion and are not subject to a new limitations period.

III. The Government's Own Conduct Underminess Its' Time-Bar Argument.

The Government characterized Movant's filing as a "supplement" and requested additional time to respond. This request is inconsistent with a claim that the filing is time-barred. If the filing was truly barred or unauthorized, the appropriate response would have been a motion to strike or dismiss, not a request for additional time to reply By seeking additional time, the Government implicit acknowledged that Movant's filing is procedurally proper and subject to response. The Government cannot simultaneously claim the filing is barred while treating it as a valid pleading requiring a substantive response.

IV. Pro Se Filings Must Be Liberally Construed

Movant proceeds pro se, and his filing must be liberally construed. [SEE: Haines v. Kerner, 404 U.S. 519(1972)]. Courts routinely treat affidavits and supplements as permissible clarifications of timely section 2255 claims, particularly where, as here, they concern ineffective assistance of counsel.

V. Conclusion

Because Movant's original section 2255 motion was timely and the subsequent affidavit and additional ineffective-assistance grounds relate back under Rule15(c), the Government's time-bar argument fails. The Court should consider all grounds on the merits.

I. ALL INEFFECTIVE ASSISTANCE CLAIMS ARE TIMELY BECAUSE THEY RELATE BACK TO THE ORIGINAL TIMELY SECTION 2255 MOTION

Movant timely filed his original section 2255 motion asserting ineffective assistance of counsel and expressly advised the Court that a memorandum of law would follow.  Prior to any government response and before any court-imposed deadline, Movant submitted an affidavit identifying additional ineffective-assistance grounds arising from the same criminal prosecution.  The Court thereafter authorized consolidated briefing, and Movant timely complied.  Under these circumstances, all claims are properly before the Court.

Federal Rule of Civil Procedure 15(c) permits relationsback when amended claims arise from the same "conduct, transaction, or occurence" set forth in the original pleading. The Supreme Court has clarified that relation back is appropriate where claims share a co "common core of operative facts." SEE: Mayle v. Felix, 545 U.S. 644, 659(2005). Here, all claims original and supplemental arise from a single core of operative facts: constitutionally deficient representation during Movant's Federal criminal prosecution, resulting in one judgment of conviction and sentence.

II. THE INVOLVEMENT OF TWO ATTORNEYS DOES NOT DEFEAT RELATION BACK UNDER EIGHTH CIRCUIT LAW

The Government's apparent reliance on the fact that Movant's claims involve two different attorneys is legally misplaced.  The Eighth Circuit does not require that relation-back claims involve the same attorney; it requires that they arise from the same criminal proceeding and judgment.

In Mandacina v. U.S., the Eighth Circuit held that amended section 2255 claims relate back when they "clarify or amplify" claims arising from the same prosecution.  328 F.3d 995, 1000(8th. Cir.2003).  Similarly, in U.S. v. Hernandez, the court permitted additional ineffective-assistance allegations to relate back because they challenged the same conviction and sentence.  436 F.3d 851, 857(8th. Cir.2006).

Movant's claims against pretrial/trial counsel and appellate counsel are factually interdependant.  Errors committed at the trial level were compounded not cured by appellate counsel's failure to investigate, preserve, or raise meritorious issues.  Evaluating ineffective-assistance in isolationwould improperly fragment what the Sixth Amendment treats as a unfied constitutional guarantee.  SEE: Strickland v. Washington, 466 U.S. 668, 695(1984)(prejudice assessed in light of the proceeding as a whole).  Nothing in Eighth Circuit precedent conditions relation back on the identity of counsel.  To the contrary, courts recognize that successive attorneys in a single prosecution may collective produce a continuous Sixth Amendment violation.

III. UNITED STATES V. CRAYCRAFT DOES NOT APPLY AND IS DISTINGUISHABLE

The Government may attempt to rely on U.S. v. Craycraft, 167 F.3d 451(8th.Cir.1999), but that case is inapposite. Craycraft involved wholly discrete attorney errors resting on unrelated factual predicates. By contrast, Movant'sclaims arise from a continuous course of deficient representation in the same case, culminating in a single judgment.

Subsequent Eighth Circuit decisions, including Mandacina and Hernandez, confirm that Craycraft does not bar relation back where claims are factually connected and challenge the same prosecution. Movant's claims therfore fall squarely within the category of amendments the Eighth Circuit permits.

## IV. THE GOVERNMENT IS JUDICALLY ESTOPPED FROM ASSERTING UNTIMELINESS AFTER INVINTING CON-SOLIDATED BRIEFING

The Government's timeliness argument should be rejected for the independent reason of judicial estoppel. Upon receiving Movant's affidavit, the Government affirmatively represented that it appeared Movant was supplementing his section 2255 motion and requested a deadline so that it could respond to all allegations at once. THe Court accepted that position and authorized consolidated briefing. Movant relied on that procedual posture and time timely filed his memorandum.

Having induced the Court and Movant to proceed on that basis, the Government may not now reverse course and invoke the statute of limitations to avoid merits review. Judicial estoppel prohibits a party from taking inconsistent positions to gain a litigation advantage. SEE New Hampshire v. Maine, 532 U.S. 742, 749 50(2001). The Government's belated objection is precisely the type of procedual gamesmanship courts reject, particularly in section 2255 proceedings. SEE§ U.S. v. Sellner, 773 F.3d 927, (32 (8th. Cir. 2014).

## V. AT A MINIMUM, EQUITABLE PRINCIPLES REQUIRE MERITS REVIEW

Even if timeliness were debatable which it is not equitable tolling would apply. Movant acted diligently at every stage, complied with all deadlines, and relied on the Government's and Court's representations. SEE: Holland v. Florida, 560 U.S. 631, 649 (2010). THe Government cannot benifit from limitations defense manufactured by its own procedural conduct.

## VI. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, Movant respectfully request a Certificate of Appealability on all calims. Reasonable jurists could debate the COurt's resolution if the timeliness, relation back, judicial estoppel, and in-effectiveness-assistance issues, particularly where claims involve successive attorneys in a single prosecution under Eighth CIrcuit presedent such as Mandacina v. Hernandez.